UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Larry P. Raymer,** | Civil No. 08-5198 (MJD/JJG) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| **M. Cruz,** | |
| Respondent. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter comes to the undersigned on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1). Petitioner Larry Raymer, currently incarcerated at the federal prison in Duluth, is proceeding on his own behalf. Respondent M. Cruz, the warden at that prison (the Warden), is represented by Chad A. Blumenfield, Assistant U.S. Attorney. The petition is duly referred for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(a). Mr. Raymer's arguments may be framed as follows.

**A.     Sentencing and Leap Years**

Mr. Raymer (Raymer) asserts in part that he should receive additional time served for the leap days during his imprisonment. Since his imprisonment in 1998, there have been three leap years, and thus Raymer asks that he be credited for another three days of time served.

Following his conviction for improper possession of a firearm, Raymer was sentenced to 180 months' imprisonment. Under such circumstances, where a prisoner is sentenced in months, a month is measured as the duration between the same dates on successive months. *See Yokley v. Belaski*, 982 F.2d 423, 424-25 (10th Cir. 1992) (applying a comparable method where a prisoner

is sentenced in years); *Wenger v. Graber*, No. 00-6212, 2001 WL 830970 at *3 (N.D.Ill. July 23, 2001) (same).

When months are measured this way, it does not matter whether every month is the same length. Although individual months may be twenty-eight, twenty-nine, thirty, or thirty-one days long, each counts as a single month. So it is immaterial whether there is a leap year, or whether a particular month has twenty-nine days. As a result, the leap years do not entitle Raymer to any additional time served.

In support of his position, Raymer relies on a concurring opinion in a Tenth Circuit case, *Wright v. Bureau of Prisons*. 451 F.3d 1231, 1237 (10th Cir. 2006). To illustrate how good time credits are awarded, Judge Terrence L. O'Brien created a table that shows "served time" of 365 days each ordinary year and 366 days each leap year. It also showed that, for each year served, a prisoner could receive up to 54 days' good time credit. *Id.* at 1237-38.

Raymer's reliance on this concurring opinion is misplaced for several reasons. As Judge O'Brien observed, the table was "intended for illustrative purposes only and does not purport to be the Bureau of Prisons' actual calculation[.]" *Id.* at 1238. Although Judge O'Brien converted a sentence of years into days, he did not arbitrarily select a uniform year of 365 days, but instead accounted for leap years and adjusted his calculation accordingly. *Id.* at 1237 ("[The sentence] is 5112 days, including the extra days in leap years.")

Based on this accounting, Judge O'Brien calculated the last day of the sentence. And the amount of good time credit, 54 days, was not affected by whether a year was a leap year. Thus by these calculations, leap days were part of the underlying sentence and did not affect how good time credits were awarded. *See id.* at 1238.

This approach is fully reconcilable with the analysis here. To determine when Raymer's sentence ends, each passing month is counted as one, notwithstanding the number of days in that particular month. Then good time is credited against the end of the sentence, without any need to revisit the irregular duration of past months or years. And this is precisely how the Warden, pursuant to Bureau of Prisons policy, calculated Raymer's sentence. (*See* Decl. of A. Norenberg, Oct. 17, 2008, at 2-3.)

**B.     Proration and Rounding of Good Time Credit**

Raymer also claims that he should be granted an additional day of good time credit. This argument arises out of how good time credit is calculated when a prisoner is nearing the end of imprisonment.

Pursuant to 18 U.S.C. § 3624(b)—and as mentioned earlier—a prisoner may be awarded up to 54 days' of good time credit for each year served. The statute further provides that "credit for the last year or portion of a year of the term of imprisonment shall be prorated[.]"

In an agency publication, Program Statement 5880.28, the Bureau of Prisons explains its approach to this statute. For each full year a prisoner serves, and assuming good behavior, the prisoner receives good time credit of up to 54 days. After this time is credited, there ordinarily remains a fractional year of time to be served. For each remaining day in this period, the Bureau of Prisons prorates good time as follows:

> The [good time] formula is based on dividing 54 days (the maximum number of days that can be awarded for one year in service of a sentence) into one day which results in the portion of one day of [good time] that may be awarded for one day served on a sentence. 365 days divided into 54 days equals .148. Since .148 is less than one full day, no [good time] can be awarded for one day served on the sentence. Two days of service equals .296 (2 x .148) or zero days [good time]; . . . six days equals .888 (6 x .148) or zero days [good time]; and seven days equals 1.036 (7 x .148 or 1 day [good time]. The fraction is always dropped.

3

*Id.* at 1-44, -45 (emphasis in text). Raymer challenges this policy and argues the prorated credit should be rounded up, not down.

The initial question is the proper standard of review. Where an agency sets forth its own interpretation of statutory language in internal policies, and those interpretive rules have not been subject to public notice and comment under the Administrative Procedure Act, a court need not grant the rules substantial deference. *Saint Marys Hosp. v. Leavitt*, 535 F.3d 802, 807 (8th Cir. 2008); *In re Old Fashioned Enters., Inc.*, 236 F.3d 422, 425 (8th Cir. 2001). So in the absence of more formal agency action, interpretive rulings only receive deference equal to their power to persuade. *Godinez-Arroyo v. Mukasey*, 540 F.3d 848, 850-51 (8th Cir. 2008); *Clark v. Dep't of Agriculture*, 537 F.3d 934, 939-40 (8th Cir. 2008).

Because the interpretive rules in the Program Statement have not been subject to public notice and comment, this less deferential standard applies here. *Egan v. Hawk*, 983 F.Supp. 858, 861 (D.Minn. 1997); *accord*, *Tablada v. Thomas*, 533 F.3d 800, 806 (9th Cir. 2008); *Perez-Olivo v. Chavez*, 394 F.3d 45, 52 n. 6 (1st Cir. 2005); *see also Saint Marys Hosp.*, 535 F.3d at 807 (applying this standard of review to program statements from the federal Centers for Medicare and Medicaid Services).

Pursuant to this standard, the rounding policy is entitled to deference. The underlying statute, § 3624(b), does not supply any particular method for prorating good time credit during fractional years. The Program Statement not only supplies a reasonable means to do so, it also offers a simple rationale for rounding down: The prisoner can only receive another day of good time credit by serving enough time, about seven days, to fully earn it. As this interpretation is reasonable and consistent with the statute, the approach of the Program Statement is sound.

## C. Errors in Presentence Investigation Report, Prison Records

Raymer also challenges some alleged errors in his presentence investigation report. The report, which the U.S. Probation Office issued on September 30, 1998, found that Raymer had pending charges or warrants for perjury, drunk driving, and failure to appear at a pretrial hearing. Raymer contends the charges are no longer pending, and therefore, his prison records should be corrected. He alleges that, because prison officials erroneously believe he has pending charges, they improperly denied him placement in a halfway house or home confinement.

The Warden argues at the outset that, because Raymer did not exhaust his administrative remedies with regard to these issues, Raymer cannot seek habeas relief. The rule is that, where a federal prisoner brings a petition for a writ of habeas corpus under 28 U.S.C. § 2241, courts will not consider the petition on its merits unless the prisoner has exhausted administrative remedies though the prison system. This rule, which is judicially created, is driven by considerations such as efficiency and respect for prison administration. *Lueth v. Beach*, 498 F.3d 795, 797 (8th Cir. 2007); *see also Gonzalez v. O'Connell*, 355 F.3d 1010, 1017 (7th Cir. 2004) (discussing policies served by the doctrine of exhaustion); *Moscato v. Bureau of Prisons*, 98 F.3d 757, 761-62 (3d Cir. 1996) (same).

The record here establishes that Raymer did not exhaust his administrative remedies. At some point prior to January 2008, Raymer told a prison official that the presentence investigation report had errors. That official wrote the Probation Office, which advised that the information in the report was accurate at the time and would not be revised to reflect future developments. The record does not say whether this communication was related back to Raymer. Believing that his concerns had been ignored, Raymer then raised the issue in his current petition.

Raymer does not dispute his failure to exhaust. He instead argues that this failure should be excused. Because he was not informed about the communication from the Probation Office, Raymer contends, prison officials refused to address his concerns. He contends that this refusal excuses his failure to exhaust.

This Court will assume, solely for the sake of argument, that exhaustion may be excused when prison officials refuse to answer a prisoner grievance. Even if so, there is not enough proof that prison officials refused to address Raymer's concerns.

When Raymer initially challenged the presentence report, he did so through an informal communication with a prison official. That official then took at least some action on the request. If this action was unsatisfactory, Raymer could have filed a written grievance with prison staff, informing them about the dispute and seeking further relief. But because Raymer did not file a grievance, prison officials did not have reason to know about Raymer's ongoing concerns. Their inaction, therefore, was not a refusal.

There is also good reason to apply exhaustion here. Raymer's informal communication, by itself, did not grant prison officials a meaningful opportunity to address his concerns. With due regard for efficient prison administration, prisoners can be expected to present their concerns through written grievances.

In the alternative, even if Raymer did exhaust this issue, the record also shows that he has no cause for relief. Raymer believes that his prison records are inaccurate because the Probation Office report shows pending charges. But prison officials had annotated this report to show that the pending charges were dismissed and the warrants were discharged. In accordance with this

annotation, the Warden represents that the charges are immaterial to whether Raymer should be placed in a halfway house or home confinement.[1]

**D.     Conclusion and Recommendation**

To the extent Raymer seeks additional credit for leap days, the Warden has appropriately calculated them as part of Raymer's sentence. To the extent Raymer asks that prorated days of good time credit be rounded up, he essentially challenges an interpretive rule that the Bureau of Prisons has set forth in a Program Statement. Because that rule is persuasive and consistent with the underlying statute, this challenge fails.

Raymer also contends that prison officials have kept erroneous records of certain pending charges. But Raymer did not exhaust his administrative remedies on this question, and therefore, he cannot obtain habeas relief. And since the Warden represents that the charges are immaterial to placement in a halfway house or home confinement, there is also no indication that this issue affects the fact or duration of Raymer's confinement. This further precludes habeas relief.

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Raymer's petition for a writ of habeas corpus (Doc. No. 1) be **DENIED.**

2. Raymer's motion for a supplemental reply (Doc. No. 17) be **DENIED AS MOOT.**

3. This litigation be dismissed in its entirety and judgment entered.

---

[1] By a motion filed on March 16, 2009, Raymer asks for permission to file a supplemental reply (Doc. No. 17). He argues that, because prison records erroneously show pending charges against him, prison officials improperly denied him placement in a halfway house. But Raymer already presented this argument through his petition and supporting papers, and in his motion, he does not explain why further briefing is necessary. And in any event, the argument fails because Raymer did not exhaust his administrative remedies. For these reasons, the motion is properly denied as moot.

Dated this 29th day of May, 2009. /s  *Jeanne J. Graham*

JEANNE J. GRAHAM
United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **June 15, 2009**. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit.